UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
KENNETH BIBILONI,                                                :
                                                                 :
                               Plaintiff,                        :
                                                                 :
               v.                                                :   3:25-CV-00137 (SFR)
                                                                 :
HEATHER, *et al*,                                                :
                                                                 :
                               Defendants.                       :
---------------------------------------------------------------- x

**INITIAL REVIEW ORDER**

Plaintiff Kenneth Bibiloni, who was formerly incarcerated at Corrigan-Radgowski Correctional Center ("Corrigan"), has filed a complaint under 42 U.S.C. § 1983 alleging that Corrigan medical staff were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. I have thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations.[1] Based on this initial review, I order as follows.

**I.     BACKGROUND**

    **A.     Factual Background**

While I do not set forth all the facts asserted in Bibiloni's complaint, I will summarize his basic factual allegations here to give context to my ruling below.

Bibiloni sustained a gunshot wound to his groin on July 8, 2023. Compl. ¶ 6, ECF No. 1. Bibiloni "self[-]treated" and "self[-]medicated" the wound to avoid going to the hospital

---

[1] Bibiloni initially filed this lawsuit when he was incarcerated. Since that time, however, he has been released into the community. I approved Bibiloni's motion to proceed in forma pauperis after his release from prison. ECF No. 15. Therefore, I conduct this initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) rather than 28 U.S.C. § 1915A.

1

and "reporting to the law." *Id.* ¶ 7. Bibiloni entered the Department of Corrections on February 1, 2024.[2] *Id.* ¶ 8. Bibiloni was originally housed at New Haven Correctional Center ("New Haven CC"). *Id.* New Haven CC medical staff screened Bibiloni after entering the prison. *Id.* ¶ 10. Bibiloni told New Haven CC medical staff that he was experiencing pain from a gunshot wound in his groin area. *Id.* Medical staff asked Bibiloni if he had sought treatment at the hospital. *Id.* Bibiloni told staff that he had not done so. *Id.* Medical staff "brushed off" Bibiloni's injury. *Id.* Bibiloni did not receive treatment for his injury "[f]or months" while at New Haven CC.[3] *Id.* ¶ 11.

Bibiloni transferred to Corrigan on July 25, 2024. *Id.* ¶ 9. Bibiloni notified medical staff of pain from his gunshot wound once he entered Corrigan. *Id.* ¶ 12. Bibiloni wrote to medical staff about his gunshot wound and difficulty climbing on a top bunk in late July. *Id.* ¶ 13. Bibiloni also wrote to "operations" at the same time requesting a bottom bunk pass. *Id.* ¶ 14. Days later, Bibiloni wrote to medical staff about pain from climbing to his top bunk. *Id.* ¶ 15. Bibiloni wrote to medical staff again about the same issue approximately one week later. *Id.* ¶

---

[2] Connecticut state court records show that, on February 1, 2024, Bibiloni was sentenced to one year of imprisonment for violation of a protective order in U04W-CR20-0490940-S and two years' imprisonment for assault with a weapon in UWY-CR19-0458383-T. *See* State of Connecticut Judicial Branch, *Criminal/Motor Vehicle Conviction Case Detail*, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=e14cbcde-883f-4dc8-91a6-569488cbeb38 (last accessed December 11, 2025); State of Connecticut Judicial Branch, *Criminal/Motor Vehicle Conviction Case Detail*, jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=78ce11cc-be39-44ac-a8d5-ae4a23c9aae3 (last accessed December 11, 2025). The court may take judicial notice of these publicly accessible court records. *See*, *e.g.*, *Cuadrado v. Naugatuck Police*, No. 3:22-CV-00969 (SRU), 2023 WL 4133712, at *2 (D. Conn. June 22, 2023) ("[T]ak[ing] judicial notice of the information on the State of Connecticut Judicial Branch website[.]").

[3] Bibiloni filed a separate complaint on October 4, 2024, asserting a deliberate indifference claim against New Haven CC officials. *See Bibiloni v. Doe*, No. 24-CV-1583 (SFR), 2025 WL 2777079 (D. Conn. Sept. 26, 2025) (decision on motion to dismiss).

2

16. Bibiloni was seen at sick call three days after he last wrote to medical staff. *Id.* ¶ 17. Medical staff did "nothing" about his pain. *Id.*

Bibiloni wrote medical staff complaining of pain in his groin two weeks after his sick call visit. *Id.* ¶ 18. Nurse Heather replied, stating that Nurse Kelly had already informed Bibiloni that he did not meet the criteria for a bottom bunk pass. *Id.* One week after receiving Nurse Heather's reply, Bibiloni wrote medical staff about his inability to take his mental health medication with crackers, as prescribed. *Id.* ¶ 19. Nurse Marisa[4] replied that Bibiloni could purchase crackers or save breakfast to eat with his medication. *Id.*

Bibiloni wrote medical staff about his groin pain in early October 2024. *Id.* ¶ 20. Bibiloni did not receive a reply. *Id.* Bibiloni wrote medical staff about his groin and knee pain in mid-November. *Id.* ¶ 22. Bibiloni did not receive a reply. *Id.* Bibiloni wrote medical and mental health staff about his mental health medication and his gunshot wound in mid-December 2024. *Id.* ¶ 23. Bibiloni told medical staff that he had stomach pain and could not use the bathroom. *Id.* ¶ 24. He also indicated that the pain from the gunshot wound was preventing him from sleeping. *Id.* Nurse Marisa replied that medical staff last received a request regarding Bibiloni's gunshot wound in July, that Bibiloni was added to the sick call list, and that his mental health medication had been "discontinued" and would not be renewed. *Id.* ¶ 23. Nurse Marisa also advised Bibiloni to buy stool softener from the commissary. *Id.* ¶ 24.

---

[4] Bibiloni spells this defendant's name as "Marisa" in the caption, *see* Compl. 1, but refers to her as "Marissa" elsewhere in the complaint. *See id*. ¶¶ 23, 32. Because I must look to the caption for the names of the defendants, *see* Fed. R. Civ. P. 10(a), I will refer to this defendant as "Marisa" throughout this order.

Medical staff saw Bibiloni regarding his complaint three days after he sent his mid-December 2024 requests to medical. *Id.* ¶ 25. Bibiloni brought up his gunshot wound and knee pain to medical staff, but they provided no treatment to Bibiloni. *Id.* Nurse Heather told Bibiloni there was "nothing she c[ould] do at the time" and that she would put Bibiloni on a list to see a medical provider. *Id.* Bibiloni wrote to medical staff four days after this visit, complaining again about his gunshot wound and knee pain. *Id.* ¶ 26. Nurse Hill replied that Bibiloni was scheduled to see the medical provider in eight days. *Id.* Bibiloni separately wrote to Nurse Kelly about his medical conditions but received no response. *Id.* ¶ 27.

Bibiloni attended an appointment in the medical department in early January of 2025.[5] *Id.* ¶ 28. The purpose of the visit was to receive documents responsive to Bibiloni's freedom of information request. *Id.* Medical staff did not treat Bibiloni for any medical condition at that appointment. *Id.* Bibiloni then wrote Nurse Kelly and Nurse Rader complaining that he had not received needed medical care at his visit the previous day. *Id.* ¶ 29. Less than one week later, Bibiloni filed grievances against "each of the defendants" regarding a lack of medical care, mental health medication, and an inhaler. *Id.* ¶ 30. Nurse Heather responded to Bibiloni's grievances filed in October and November of 2024 the following day by telling Bibiloni that he was on a list to see a provider and that he should buy Tylenol or ibuprofen from the commissary. *Id.* ¶ 31. Bibiloni wrote Nurses Marisa, Reddy, and Daima four days later complaining of back pain, leg pain, and groin pain from his gunshot wound. *Id.* ¶ 32.

---

[5] The complaint states "January 7, 2024," *id.* ¶ 28, but because Bibiloni was not imprisoned until February 1, 2024, *id.* ¶ 8, I will assume that "2024" should be "2025."

4

Bibiloni attended sick call three days after writing Nurses Marisa and Reddy. *Id.* ¶ 33. Bibiloni spoke to Nurse Kelly about his pain. *Id.* Nurse Kelly told Bibiloni, "I don't know what you want me to do about the pain you're having[.] There's nothing medically I can do[.]" *Id.* Nurse Kelly also stated, "X[-]rays show there's nothing that can cause you pain there" and that she had "seen [Bibiloni] move around [his] unit" after reviewing video footage from the unit. *Id.* Bibiloni asked for a knee brace and pain medication. *Id.* Nurse Kelly denied these requests. *Id.* Bibiloni then filed a grievance against Nurse Kelly when he returned to his unit. *Id.*

Bibiloni seeks damages and declaratory and injunctive relief from defendants in their official and individual capacities. *See Id.* ¶¶ 4, 34–37, 39.

## II.    DISCUSSION

Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted)); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants). Liberally construed, Bibiloni's complaint most strongly suggests claims of deliberate indifference to serious medical needs under the Eighth Amendment and medical malpractice and negligence under state law. *See* Compl. 1.

### A.    Deliberate Indifference Claims

Because Bibiloni was serving a sentence while in custody at Corrigan, *see* note 1, *supra*, his deliberate indifference to serious medical needs claim, Compl. ¶¶ 6-9, is analyzed under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced prisoners are considered under the Eighth Amendment);

*Johnson v. Cook*, No. 3:19-CV-1464 (CSH), 2021 WL 2741723, at *1, 12 (D. Conn. July 1, 2021) (considering a claim of deliberate indifference to medical needs brought by a since-released prisoner under the Eighth Amendment).

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference to serious medical needs claim, a plaintiff must present evidence of sufficiently harmful acts or omissions by a prison official. *Estelle*, 429 U.S. at 104–06.

A successful claim for deliberate indifference to serious medical needs must satisfy objective and subjective components. The objective component requires Biblioni to "show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order) (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). I must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. If a plaintiff was completely deprived of medical care, courts "examine whether the inmate's medical condition is sufficiently serious." *Id.* Whether a medical need is sufficiently serious depends on factors that include if "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," if the condition "significantly affects an individual's daily activities," and if the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted). If the plaintiff received medical treatment but it was inadequate, "the seriousness inquiry is narrower," and focuses on "the challenged delay or

interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280 (internal quotation marks omitted).

The subjective component of the deliberate indifference test requires a defendant to have been "actually aware" that his or her actions or inactions would cause a substantial risk of harm to the plaintiff. See *id.* at 279–80. "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* at 280. Recklessness requires more than merely negligent conduct. "[M]ere disagreement over the proper treatment does not create a constitutional claim," and "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703. Medical malpractice "may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (internal quotation marks omitted).

Bibiloni brought a similar Eighth Amendment deliberate indifference claim against staff at New Haven CC, *see* note 2, *supra*, where he was imprisoned from February 1, 2024, until his transfer to Corrigan on July 25, 2024. *See* Compl. ¶¶ 8–9. I denied the defendants' motion to dismiss the Eighth Amendment claim in that case and allowed the state law claims to proceed. *See Bibiloni v. Stephanie*, No. 3:24-CV-01583 (SFR), 2025 WL 2777079 (D. Conn. Sept. 26, 2025). As the allegations here are similar to the allegations in *Bibiloni v. Stephanie*, I will also permit the Eighth Amendment and state law claims to proceed to service in the present case.[6]

---

[6] I may exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

### B. Relief Requested

While Bibiloni's claims may proceed, they may not proceed against all defendants, in all capacities. Bibiloni sues all defendants in both their individual and official capacities. *See* Compl. ¶ 4. Claims for damages against the defendants in their official capacities are barred by the Eleventh Amendment because the defendants are state employees. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 169 (1985). To the extent Bibiloni seeks damages from the defendants in their official capacities, that request is denied.

A plaintiff seeking damages from a defendant in her individual capacity must establish her personal involvement in the constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). Personal involvement may be shown by "direct participation," which requires "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted). This is true with supervisory officials, as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (stating that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" to hold a state official liable for damages under § 1983).

Here, Bibiloni names seven Corrigan medical providers as defendants: Heather, Marisa, Hill, Reddy, Kelly,[7] Daiama, and Rader. Compl. ¶ 4. But I can only discern the personal involvement of the defendants whose conduct is described in the body of complaint or the exhibits attached to it. *See Stiggle v. Arnone*, No. 3:13-CV-00238 (VAB), 2015 WL 14099081, at *5 (D. Conn. June 17, 2015) (looking to complaint and exhibits for facts establishing personal involvement); *Ratches v. Guerrera*, No. 3:24-CV-1319 (SVN), 2025 WL 437494, at *2 (D. Conn. Feb. 7, 2025) (dismissing claims against Governor and DOC Commissioner because plaintiff failed to "allege[ ] any facts in the body of his complaint about the[ir] direct personal involvement"); *King v. Falco*, No. 16-CV-6315 (VB), 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (concluding that personal involvement not established where the "plaintiff includes [the defendant's] name in the case caption but fails to make any substantive allegations against her in the body of the complaint").

Bibiloni describes writing to "medical" or "the defendants" throughout his complaint. *See, e.g.*, Compl. ¶ 20 (stating that "I wrote medical with complaints of pain in which I still have not received a reply from any of the defendants"). Although all "the defendants" may have been employed in "medical," such allegations are insufficient to establish personal involvement. *See Johnson v. Rowe*, No. 3:24-CV-617 (MPS), 2025 WL 1786083, at *6 (D. Conn. June 27, 2025) (noting that "[c]onclusory allegations of personal involvement are insufficient"); *Jean-Baptiste v. Froehlich*, No. 3:21CV01482 (SALM), 2022 WL 94407, at *2

---

[7] Bibiloni separately lists "APRN Kelly" and "RN Kelly" in both the caption of his complaint and the list of defendants. *See* Compl. 1–2. But all the allegations in the complaint refer only to "APRN Kelly." *See*, *e.g.*, *id.* ¶¶ 18, 27, 29, 33. Accordingly, I presume that APRN Kelly and RN Kelly are the same person whose name Bibiloni erroneously listed twice. If this presumption is wrong, any claims against RN Kelly would be dismissed for lack of personal involvement.

(D. Conn. Jan. 10, 2022) (collecting cases)) (stating that the plaintiff's conclusory allegations about defendants' personal involvement without specific allegations of actual conduct are "insufficient to state a claim").

Bibiloni's specific allegations against individual defendants do not necessarily establish personal involvement, either. For instance, many of the assertions against individual defendants involve receiving or replying to grievances. Typically, "[r]eceiving a grievance is not enough to establish personal involvement." *Jordan v. Quiros*, No. 3:23-CV-254 (VAB), 2024 WL 3219130, at *8 (D. Conn. June 28, 2024); *see also Henderson v. Martin*, No. 3:21-CV-1308 (SRU), 2022 WL 2704100, at *5 (D. Conn. July 12, 2022) (noting that "receipt of a letter or grievance without personally investigating or acting is not enough to establish a supervisor's personal involvement"). Rather, "[p]ersonal involvement will be found . . . where a supervisory official receives *and acts on* a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Green v. Riffo*, No. 3:18CV00960(SALM), 2022 WL 94224, at *4 (D. Conn. Jan. 10, 2022) (internal quotation marks omitted; emphasis original).

Rader, who merely received a grievance but did not respond, *see* Compl. ¶ 29, did not have sufficient personal involvement under the circumstances of this case. *See Jordan*, 2024 WL 3219130, at *8; *Green*, 2022 WL 94224, at *4. Heather, Marisa, Hill, Daima, Reddy all responded to Bibiloni's grievances, Compl. 3–5, 6, 16, 18, and can be considered personally involved. *See Green*, 2022 WL 94224, at *4. The remaining defendant—Kelly—did not respond to Bibiloni's grievances, *see* Compl. ¶¶ 27, 29, but Bibiloni contends that Kelly was the nurse who told him, "[t]here's nothing medically I can do." *Id.* ¶ 33. This is sufficient to establish the personal involvement of Kelly. Accordingly, Bibiloni may pursue damages from

10

Nurses Heather, Marisa, Hill, Daima, Reddy, and Kelly on his Eighth Amendment deliberate indifference, medical malpractice, and negligence claims.

Lastly, Bibiloni's claims for declaratory and injunctive relief are dismissed because he was released from Corrigan. *See* Mot. to Exped. 2, ECF No. 12 (envelope bearing Waterbury apartment address); *Vega v. Lantz*, No. 3:04CV1215(DFM), 2005 WL 1802145, at *1 (D. Conn. July 27, 2005), aff'd, 173 F. App'x 74 (2d Cir. 2006) (noting that "[t]he Second Circuit has held that an inmate's request for declaratory and injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution.") (citing *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976))).

### III.  ORDERS

For the foregoing reasons, I conclude as follows: Bibiloni may proceed on his individual capacity claims of Eighth Amendment deliberate indifference to serious medical needs and state law medical malpractice and negligence claims against Nurses Heather, Marisa, Hill, Daima, Reddy, and Kelly for further development of the record.

All other claims are **DISMISSED,** 28 U.S.C. § 1915(e)(2)(B), and all other defendants are terminated.

**Bibiloni has two options as to how to proceed in response to this Initial Review Order:**

(1) If Bibiloni wishes to proceed immediately **only** on the claims set forth above, he may do so without further delay. If Bibiloni selects this option, he shall file a notice on the docket on or before **January 18, 2026,** informing the court that he elects to proceed with

11

service as to the claims set forth above. The court will then begin the effort to serve process on Defendants in their individual capacities as described above.

(2) Alternatively, if Bibiloni wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint on or before **January 18, 2026**. **An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Bibiloni elects to file an amended complaint, the complaint addressed by this Initial Review Order will **not** proceed to service of process on any defendant.

If the court receives no response from Bibiloni before **January 18, 2026**, the court will presume that Bibiloni wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and he will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Change of Address** If Bibiloni changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Bibiloni should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. Because Bibiloni has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

**SO ORDERED.**

New Haven, Connecticut
December 18, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge